This case on Docket 2-14-0646 for Arcadia Bldg, LLC v. Data Net Systems, LLC and Online Folding, LLC. Representing the operant, Attorney Philip J. Piscopo. Representing the attorney, Attorney Kate L. McGrath. Counsel, give me one second. I forgot my glasses. I'm useless without them. This won't count against your time, by the way. You may proceed, Mr. Piscopo. Good morning, Your Honors. Good morning. May it please the Court, I represent the plaintiff, Arcadia Bldg, LLC, on this appeal and also the appellant, obviously. This case is about the summary judgment and the summary judgment standards. And those standards have been propounded by courts really throughout the time we've had summary judgment, which is that if there's any disputed material fact in summary judgment... What's a material fact? A material fact is whether or not the defendants, the tenants, had abandoned the premises before the landlord had done anything to reclaim the property. This was a lease, a written lease, that was going on for several years. I don't remember exactly how many years, but it was several years. But the tenants decided that they wanted to move out. And there's plenty of evidence that they both decided to move out, and they did move out, no later than October 1st of 2012. And why did you post a 5-day notice? We posted a 5-day notice because perhaps the defendants might change their minds, they want to move back in, but he did make it pretty clear that he was moving out. So it wasn't all that clear? Well, I thought it was pretty clear, but just as an extra measure, just to make sure, our client thought it appropriate to send out a 5-day notice. When you send one out, don't you have to comply with it? None of possession has already been given back. In fact, there's cases, the Barkowski case versus Albert Hofeld, I mean, it's an older case, but it says that once possession has been terminated by some other means, a 5-day notice is superfluous. It doesn't do anything from a legal perspective. Once the person's moved out and he doesn't care if there's a 5-day notice sent out, he's already gone. And so the argument on the other side is that they somehow magically got placed back into possession simply because a 5-day notice was issued. And on summary judgment, that's completely inappropriate because he was already gone. And, in fact, there's plenty of evidence in the record that he was gone. Yes, Your Honor? He signed a new deal with Regis. Regis provides office services, a shared office space. And immediately upon signing that, and that date with Regis is effective October 1st, so immediately upon signing that, even earlier than that, September 27th, Mr. Vitale and his company started moving out of the building. And there's clear evidence in the record that that was observed. Isn't there a lot of evidence that they left a good bit of things behind? They did leave personal property behind. And that personal property consists almost entirely of office furniture, which they don't need when they moved into the shared office space of Regis because Regis provides all that stuff. Right, but isn't that still my personal property left in premises? Sometimes it would be, but not in this case. And the reason that's the case here is because Mr. Vitale specifically told our client, Scott Price, that I've taken out everything I want. You do whatever you want with the rest of it. Either you throw it out or you just send it over to me. But I don't want it anymore. I'm leaving it here. Sometimes people confuse a motion for summary judgment wherein there is a material issue of fact because it's a he said, she said, or he said, he said situation where A says the light was green and B says no, the light was not green. And in that situation, you have a controverted factual situation. Was there a controverted factual situation in this case? Yes, there is. Or was it a controverted ultimate factual situation? No, I would say it's a controverted factual situation because Mr. Vitale in his deposition says that the topic of the personal property didn't come up in my October 1st conversation with Mr. Price. Mr. Price says that no, Mr. Vitale specifically said that I don't want that property anymore. I'm leaving it behind. You do whatever you want with it. And when that happens, he's abandoned the personal property and he's not staying there anymore, which means he's not staying there anymore. He doesn't even want time to come back. In fact, I would submit that with Mr. Vitale saying the matter didn't come up, what he's really saying is he didn't ask for a few extra days to get that personal property out. If you're talking and you're saying that I'm terminating my lease and I'm moving out, he could say, but I'm not ready to move yet. I still need a few more days to get my stuff out. But he didn't say that. He said that the matter didn't even come up at all. So his statement actually supports our view that he did abandon the personal property. But to the extent that Mr. Price says that he told me he was abandoning the personal property as well, and Mr. Vitale saying that that didn't happen, that is an issue of fact. Is one entitled to future rent under a breach of contract based upon contract law or the statute? It would be based upon contract law. Because the data net systems had a contract, a lease with Arcata Building, and then when they left, and we contend they left without any justification, they're still responsible for the rest of the lease subject to mitigation of damages. There are some statutory provisions that do govern the matter. So the trial court was not only wrong relative to its rationale, it was also wrong as to its rationale that the statute precluded recovery under the circumstances because you've just told us that it's not based upon or the right to additional rent is not based upon compliance with the statute, but it's based upon compliance with the terms of the contract. That's correct, Your Honor. Because the data net systems and online holdings left without any justification, they're in breach of the lease and subject to our duty to mitigate damages, we're entitled to get the rent from that. You can't just leave a place without a good reason to do so based on the doctrines of the lease or whatever common law might. This says case number 12L612. Is that a law division case or is that a forcible entry and detainer case? It's a law division case because what we were suing for was the back, I'm sorry, the rent going forward from October 2012 on. And the damages were over $50,000, but if it were under $50,000, it would have been the AR division on the simple breach of contract issue. Is the factual scenario that you related regarding the abandonment of the property is based upon the abandonment of the personality? Is there any other factual scenario that you're aware of that would preclude summary judgment? Well, the fact that he told, that Mr. Vitale told Mr. Price that I have to take my employees out, I have to take myself out, he's telling him that he's already done that. He's not saying that I'm going to do that after one more month. He's telling Scott Price that he's doing that right now and he has done it. His letter of October 4th says that I removed myself and my employees from the premises. Now, in his deposition, he tried to evade that. He tried to say that that's different from moving out, but eventually he agreed that, no, I did move out when I told him I was doing that. I would also note that there was no rent paid in October 2012. And that's important here because this isn't a case where we have a business tenant or even a residential tenant who just runs out of money and can't afford to pay the rent. Mr. Vitale and his companies could easily afford to pay the rent, but he chose not to do that. And the reason he chose not to do that is because he was moving out. If he really needed a few extra days or a few extra weeks to store his stuff before he can finally move out, he would have gone ahead and paid that rent in October because he did it every single month from the beginning of the lease right up until then. But then he suddenly chooses not to pay, not because he can't, but because he won't. And that's a definite indication that he intended to do that. Does it matter whether he could or could pay the rent or couldn't pay the rent? For the reason he didn't pay the rent, what difference does it make? Well, I think it does make a difference because, like, let's say you have a residential tenant who is living in an apartment and the tenant loses his job or loses her job and can't afford to pay it, looking for a place to live. Then the rent comes due and, oh, no, I can't pay the rent. Well, I hope I can get it. I hope I can scrape it together a few bucks to do it. That's very different from what we have in this case. What we have in this case is we have a person who intended to leave because he wanted to leave. It had nothing to do with the fact that he didn't have the money to pay the rent anymore. He wanted to leave and he did. Again, what's the significance? Why does it matter? Because it goes to the question of intent. The residential tenant is not intending to move, just being forced to when she can or he can't. Okay, so with the residential, if you file a 5-day notice, that means it has some meat on that bone? Yeah, then it does have some meat on that bone because now the landlord is saying, okay. But in this case, because you think I had the money, a 5-day notice doesn't make any difference. No, no, no, that's not what I'm saying. What I'm saying is that the fact that he didn't pay the rent in October 2012 means that he was in conjunction with everything else. The fact that he moved all his stuff out, the fact that he called Mr. Price. But he didn't move it all out. We've established that, right? Well, he moved out all the stuff that he wanted and he told Mr. Price that he moved out everything he wanted to move. When did that communication take place? That took place on October 1st. And that was a phone conversation? That was a phone conversation. And both parties testified about that conversation in their depositions. And in Mr. Vitale's version, he said that he didn't ask for a few more days to get his stuff out. He said, I'm gone. I left. And Mr. Price says, in addition to that, he said, I already took out everything I wanted to take out. And you do what you want with the rest of it. And like I said before, that makes some sense because everything that's left is office furniture, which he doesn't need in his new place. And used office furniture isn't worth very much, as my client discovered. So he had no reason to take it with him. And he said he had no reason. He said he didn't want it. So therefore, he abandoned the property, rendering the five-day notice really superfluous. Do you think that when you file a five-day notice that you don't have to then comply with the statute? Is that your position? Whereas here, you just said, well, we did it just because. Well, you never know. He might have changed his mind. So when you file a five-day under those circumstances, then it's up to you as to whether you comply with it? No, it's not necessarily up to the plaintiff as to whether to comply with it. If the tenant is still in possession, then yes, he does have to comply with it. He has to wait the five days before doing the act. But I guess the bottom line is if October 1st you thought there was no longer possession, why four or five days later did you file a five-day notice? Well, the reason is. It seems inconsistent in its ways. It does seem inconsistent. But from a legal standpoint, it really doesn't matter because the defendant had already abandoned it. And there's case law that supports that notion. So it really doesn't matter. If it really doesn't matter, then the five-day notice didn't really give the tenant any rights or rejuvenate any rights that the tenant may have had, even though I believe during an argument earlier you suggested that it did. No, I don't believe that. Because I thought you said, well, if he decided to change his mind and didn't want to come back, he could have paid the rent and he could have come back and faced upon the five-day notice. Well, if he had changed his mind, he would have let our client know and said, you know what, I decided I need to get the property after all. He doesn't have to do that under a five-day notice. All he has to do is pay the rent. Well, if he pays the rent, then the lease continues. So intent and whether I intended to do it or didn't intend to do it really doesn't matter under a five-day notice. You either pay it or you don't, right? True. But then that leads to the next thing, and that is that my client had provided affidavits that said that, you know what, if he did change his mind, if he says, oh, you know what, I decided I don't want to go with Regis after all or I need another month, he would have changed the locks for him. He would have put him right back to where he was before. And these parties have been in communication constantly throughout the term of the lease, and all of a sudden it abruptly stops. But there was no reason to think that that wouldn't get started again. In fact, Mr. Vitell expected the locks to be changed after he left. Do you see the counterfactual conditional of giving a five-day notice while simultaneously arguing that it really is superfluous because the person has already abandoned the property? It's like heads I win, tails you lose, isn't it? I mean, isn't that what you're basically saying? No, I don't know. I don't think it's saying that at all. I would note that the five-day notice itself contains a recognition that you have abandoned the property. And Mr. Vitell never disputed that. He never called up and said, no, no, no, I didn't abandon the property. I'm still here. That was never said. And so all he's trying to do is protect himself in case Mr. Vitell changes his mind and then claims that he needs more time on the property. Do you think your client might in the future, when he files a five-day notice, might wait for five days before he changes the lock? I would expect he would do that. But that doesn't mean in this case that he did anything wrongful. He didn't do any act that deprived Mr. Vitell of possession, and that's what a forcible entry is. Mr. Vitell had already left possession. Whether a five-day notice was sent out, it really doesn't matter because he didn't do an act that deprived him of possession. The five-day notice was nothing more than a piece of paper floating around that didn't really give any rights because there were no rights for the tenant to reclaim after he had already left. I would submit that this case is a lot like the YMCA case, which actually they said if you don't leave, we're going to plug your doors. And the defendants moved out. They left. And then the YMCA came and plugged the doors. And then the tenants came back and they filed their own lawsuit saying that this was a wrongful act. It was a forcible entry. And the court said, no, it's not a forcible entry because the ‑‑ No, it said if you leave without being hit over the head, then you're leaving voluntarily is what they said. Because they basically said that the threat really wasn't a threat. Because why? Because you left. Well, if you left, you must have left voluntarily even though you were threatened. I don't really think that case was well thought out to the extent that it assumes that whenever a tenant leaves, so long as he hasn't been shot at, kicked, or beaten, then it must be a voluntary withdrawal. And that's totally inconsistent with the whole reason for the forcible entry and detainer law. Well, even if that were the case, and I can see that argument, that wasn't the case here. There were no threats given here. Instead, it was the defendants who, on their own initiative, decided to move before any kind of notice was sent out. He recognized that he had moved. He even claimed that the locks were changed before the locks were changed, before the five‑day notice was sent. So all this time, he's trying to manufacture some way to get this thing out of here and try to claim that somehow a forcible entry had been effected, even though he had not, even though he had actually left. Any other questions? Thank you. You'll have an opportunity to make rebuttal. Thank you. Ms. McCracken? May it please the Court? Kate McCracken on behalf of the defendants. I'd like to start off where Mr. Piscopio left off. In essence. Mr. who? Piscopio. Okay. I believe that's the correct pronunciation. Piscopo. Like Joe Piscopo. I know. I've always pronounced it with an extra I. In an effort to excuse the plaintiff's behavior, he's relying on a theory of abandonment. And the fundamental flaw with that theory of abandonment is that it is entirely inconsistent with what the plaintiff actually did. If the plaintiff actually felt and believed that Mr. Gattel had abandoned the premises, there would have been no five-day notice. To the extent he provided Mr. Gattel with the opportunity to pay $4,500 within five days so that he could get back in there and actually get his personal property. Instead, the same days he sends the notice, he changes the locks. Really what the plaintiff is asking you to do, the landlord is asking this Court to deem a landlord's five-day notice and the requirements of the forcible entry and detainer statute as irrelevant and superfluous. Those are his words in his brief. Judge Brown appropriately and rightfully disagreed. When the landlord elected to give the five-day notice, he chose, he elected to be governed by the forcible entry and detainer statute. And I believe that that is what the Court requires in the Abditch case. At the point when the landlord makes that election, the landlord, by his own actions, irrespective of what conversations may or may not have taken place, he acknowledges the tenant's possessory rights. Pursuant to that notice, the tenant had five days to pay or vacate. If the tenant fails to do either, then the landlord's remedy is to file the forcible entry and detainer statute action. This is essentially a statutory construction case requiring that we look at the purpose of the forcible entry and detainer act. Were the pleadings based upon the contract or were the pleadings based upon enforcing the statute? Depends on what pleadings. I mean, the motion for summary judgment that preceded this appeal was based on the forcible entry and detainer statute and the five-day notice. And the defendants- Was there another count? There were, I think, five counts. There were five counts. And two were not- To the two counts that were not part of this appeal are the security deposit and alleged damage to the premises, all $5,000 and under. The material issue in this case is essentially the rent. You heard Mr. Pisco say that they're not seeking, his client's not seeking payment of rent under the forcible entry and detainer act. He's seeking it under the general terms of the contract. But I think there's a fundamental flaw with that. The minute he sent that five-day notice, this became and is, in fact, a case under the forcible entry and detainer statute. His client elected to do that. This is a commercial landlord who elected to send a five-day notice. Well, I understand the concept of election remedies. What I'm not quite sure of is whether or not the election takes place when he sends out the notice or when he files the pleading in court. I think when you send a five-day notice, again, I believe once you elect to pursue that remedy under the forcible entry and detainer statute, you have elected to proceed under the forcible entry and detainer statute. That's why you send the notice. So you're saying he has no contract remedy? I'm saying that once he sent the notice and changed the laws. The law is that his right to future rent is terminated. Under the Act? Under the Act. But my question is, other than – so you're saying based on this, even if he had a contract claim, it's defeated? Correct. As opposed to he doesn't have a contract claim. Is there anything that would preclude him from seeking it? Just a simple breach of contract. Had he not sent the five-day notice, then yes. Okay, we're going to just agree to disagree on that point. Fair enough. For decades, the Court has repeatedly emphasized that the purpose of the Act is to promptly restore an agreement to possession. Clearly, there was a question in the landlord's mind as to possession or else the five-day notice would not have been sent. The purpose of the forcible entry and detainer act is specifically to prevent and prohibit the actions of this landlord. This is exactly what the forcible entry and detainer statute prohibits, changing the laws. It's almost as if you're arguing that the service or the posting of the five-day notice was a judicial admission or something whereby it cannot be refuted or contradicted by the plaintiff. I think once you make that decision, you're required to act pursuant to the statute. You've elected to proceed in a manner that falls under the statute. Otherwise, what's the purpose of the statute? Do you want to address? I'm sorry. To confuse, obfuscate, make lawyers worth the fees they charge. What were you going to say, Bob? Do you want to address the Perry case? Yes, I'd love to address the Perry case. In that case, specifically, the plaintiffs in that case or the tenants, the tenants raised their hands and acknowledged, we're out. We're totally out. I don't want you to plug the locks.  Quite frankly, what the tenants should have done in the Perry case is stated. If they really wanted to pursue their forcible, at least under the ruling of the case, if they really wanted to pursue their forcible entry and detainer rights, they shouldn't have thrown their hands up and said, oh, yeah, yeah, yeah. I'm out. You're right. And in the Perry case, they had a very specific contract. Actually, everything that the landlord did, with the exception of threatening to plug the doors, everything that the landlord did in that case was specifically consistent with what the agreement was between the parties, to the extent that there was a requirement in their agreement that I can give you notice if you're too loud. They were too loud. The landlord gave them notice. They threw their hands up and said, fine, fine, fine. We'll get out. Don't plug anything. And they were all together out. There was not, as everyone has acknowledged in this case, substantial personal property remaining. The landlord did essentially everything that was required under the agreement, and the defendant or the tenant threw its hands up and said, you're right, I'm getting out. That's entirely different. But the principle of that case remains the same, to the extent that there's, if you're going to, all the court ruled in that case is the landlord did not forcibly or illegally prohibit access while the lease term or while possessory rights existed. Okay. That's not our case here. Factually, the Perry case is entirely different than the situation we have in this case. In this case, the door was plugged. In this case, the door was plugged. I will say that I think this sort of issue as it relates to substantial material facts is somewhat misplaced. Judge Brown specifically said, while there are various questions of fact in this case, there is no genuine material issue of fact. Plaintiff admitted that the defendant was not given notice of the changing of the locks. Plaintiff admitted that the locks were changed prior to the expiration of the five days. Plaintiff admitted that the personal property of tenant used and retained in the course of defendant's business remained in the premises at the time, and the plaintiff admitted changing the locks. Those are the material facts. There is no genuine issue of any material fact, and in this instance, Judge Brown was rightful in granting the motion for summary judgment. If there are any further questions, I'm happy to answer. Just out of curiosity, I think I read that the five day notice was sent via email? No, it was provided. I believe the affidavit of Todd Kraft was, I delivered the five day notice. Okay. Okay. Thank you. Thank you. Mr. Piscopo, or is it Piscopo? I used Piscopo, but I don't really care if it's Piscopo. Thanks for asking. Well, very brief. I first note that the five day notice was sent by email and not by any, there was no affidavit of Todd Kraft or anybody else. It was an email sent by Scott Price, and that email is in the record. In fact, it's in my appendix, 112 and 113. But a more important note than that, counsel had attempted to distinguish the Perry case by saying that the tenants there, if they wanted to exercise their rights, they shouldn't have raised their hands and said I'm out. Well, that's exactly what happened here, that her client in this case made the same mistake, so to speak, as the tenants in Perry. In fact, it says in the record that he had moved out of his building, he had moved whatever equipment and personal property that he wanted out of the space. He was leaving the building and was not going to continue his lease and was not going to make any further payments. It was up to me, Scott Price, whether I wanted any of the stuff he left. I could let him know whether to leave it or want him to take whatever we wanted him to take out. That's a pretty clear statement that I'm out, just like the tenants in the Perry case. And then he goes on on October 4th, and this is before the locks were changed. On October 4th, Mr. Vitale sends a letter to Mr. Price saying I consider the lease terminated. So before Mr. Price did anything at all, he considered the lease terminated and he was out. So those are clear facts that require the trial court to deny a summary judgment on that. A summary judgment can only be granted if there's no dispute of the material fact and it's reviewed de novo. I do believe that Judge Brown made a significant mistake by not recognizing that at least as a genuine issue of fact for a jury to decide. And I would further note that if the locks, let's say the locks had not been changed on the 5th and the five days had gone, we would be in a similar situation by November 2nd when we filed our complaint. The complaint would have been identical. So it wasn't because the, because... What would the difference be that you would have complied with the five-day notice? Well, the five-day notice doesn't even appear in the complaint at all, to my knowledge. But again, that's a distinction, not a difference here because he had already left even before the five-day notice. And so... But did you see our point that if that's true, then why did you post a five-day notice? I think... You can't say I believed 110% that this property was abandoned, but I think I'm going to give you this notice anyway. I mean, can you at least agree that that does seem somewhat inconsistent? I would agree it does seem somewhat inconsistent. I would attribute it to somebody, at least from a lawyer's standpoint, who wants to be careful in case this guy is being slippery. But I would also submit that that's a question for the jury to decide on a summary judgment question. Your question is a good one, and it's a good one that the jury might want to ask, and we want to present evidence on that. But the trial court denied us an opportunity to present that to a jury. The jury can decide if that's inconsistent with the right of possession or not. It's an issue of material fact that should not have been decided by the judge on a summary judgment. And that's why the judgment should be reversed. And we would ask for that relief. If you have any other questions, I'd be happy to answer them for you. Did you file a jury demand? We did file a jury demand, Your Honor. Yes. I wasn't sure if you were rhetorically stating a jury demand. I'll check to make sure, but I'm pretty certain that we did. It's really not material because if it's a question of fact, it doesn't make any difference whether it's a jury trial or a bench trial. That's true. If there are no other questions, then the court's in recess. Case will be taken under advisement. Disposition under as easily and as speedily as possible. Thank you, Your Honor. Court's adjourned.